UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA- WESTERN DIVISION

| | |
|---|---|
| CAROLYN GRAY, | ) No. CV 08-5760 SH |
| Plaintiff, | ) MEMORANDUM DECISION |
| | ) AND ORDER |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

## I. PROCEEDINGS

This matter is before the Court for review of the Decision by the Commissioner of Social Security denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 400 et seq. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, and the defendant has filed the certified transcript of record. After

reviewing the matter, the Court concludes that the Decision of the Commissioner should be affirmed.

## II. BACKGROUND

Plaintiff Carolyn Gray has filed seven applications for SSI. Plaintiff's fourth and fifth applications, dated September 15, 1995 and March 31, 2001, were granted based on a schizoaffective disorder and a bone fracture, but benefits were subsequently terminated based on residence in a penal institution or other public institution. On July 23, 2003, plaintiff filed her sixth application for SSI, alleging that she became disabled on January 1, 1992, due to paranoia, nervousness, panic attacks, and a bilateral hand injury. (Administrative Record ("AR") 13). Plaintiff's application was denied initially, and again upon reconsideration. Thereafter, plaintiff filed an untimely request for hearing to review the denial of her application for SSI, but established good cause for the late filing. She was afforded a hearing before Administrative Law Judge ("ALJ") Mason Harrell Jr. on June 16, 2005. (AR 374-404). ALJ Harrell issued an unfavorable Decision on November 4, 2005 and found that plaintiff had not been under a disability within the meaning of the Social Security Act since July 23, 2003, the date the application was filed. (AR 12-20). ALJ Harrell also found that plaintiff's medically determinable impairments consisting of a schizoaffective disorder and a swan neck deformity of the left long finger with mild ulnar deviation of the proximal interphalangeal joint did not preclude her from performing simple, repetitive tasks, as well as medium work that did not require fine manipulation, and no more than occasional gross manipulation, with the left hand. (AR 19-20).

On June 4, 2007, the District Court reversed and remanded the Decision for further development regarding plaintiff's subjective limitations. (AR 497-502). Given the remand, the seventh application, dated November 21, 2005, is a duplicate application. (AR 408, 433). After a hearing before ALJ Richard A.

Urbin on June 9, 2008, ALJ Urbin developed the record as ordered by this Court and found plaintiff not disabled within the meaning of the Social Security Act at any time since July 22, 2003, in a de novo decision dated June 26, 2008. (AR 405-17).

On June 27, 2008, plaintiff filed a Request for Review of the Hearing Decision. After the Appeals Council denied review of the decision, plaintiff filed this action.

Plaintiff makes three challenges to the ALJ's determination. Plaintiff alleges that the ALJ erred by failing: (1) to properly consider "treating physician" Dr. Mehar Gill's opinion regarding plaintiff's psychosis, bipolar disorder, auditory hallucinations and GAF score of 15; (2) to properly consider testimony of lay witnesses Lanisha Tillman and Timothy Moore; (3) to properly pose a complete hypothetical question to the vocational expert. Each of plaintiff's contentions will be addressed in turn.

### III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence must be more than a mere scintilla, but not necessarily a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003).

The Court cannot disturb the Commissioner's findings if those findings are supported by substantial evidence, even though other evidence may exist which supports plaintiff's claim. *See Torske v. Richardson*, 484 F.2d 59, 60 (9th Cir. 1973), *cert. denied*, *Torske v. Weinberger*, 417 U.S. 933 (1974); *Harvey v. Richardson*, 451 F.2d 589, 590 (9th Cir. 1971). Furthermore, the Court may not

affirm the ALJ's decision "simply by isolating a specific quantum of supporting evidence." *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

A person is "disabled" for the purpose of receiving benefits if the person is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The plaintiff has the burden of establishing a prima facie case of disability. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992) (citing *Galant v. Heckler*, 753 F.2d 1452).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, disability benefits are denied. Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairments meet or equal a "listed impairment," the person is conclusively presumed to be disabled. Fourth, if the impairment does not meet or equal the "listed impairments," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied. Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

## IV. DISCUSSION

***ISSUE NO. 1*: The ALJ did not err in failing to discuss "treating physician" Dr. Mehar Gill's opinion regarding plaintiff's psychosis, bipolar disorder, auditory hallucinations, and GAF score of 15.**

Plaintiff asserts that the physician who conducted the psychiatric evaluation on October 4, 2006 at the Arrowhead Regional Medical Center was plaintiff's treating physician, and therefore the ALJ had a duty to consider this opinion. Plaintiff contends that the ALJ failed to discuss, or even mention, the two-page opinion of plaintiff's "treating physician," Dr. Mehar Gill, anywhere in his decision.

Dr. Gill identified plaintiff as a walk-in patient. (AR 1068-69). He reported that plaintiff laughed inappropriately, was very paranoid, expressed suicidal thoughts, and admitted to hearing voices telling her to kill herself. *Id.* Dr. Gill also stated that plaintiff was placed on "5150 " hold by a clinician and was, at the time of the evaluation, a danger to herself and others and gravely disabled. *Id.* Plaintiff further contends that the ALJ ignored the fact that Dr. Gill assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 15. Defendant responds that the ALJ properly considered the medical evidence and found that the plaintiff had the residual functional capacity ("RFC") to perform medium work with certain limitations.

A treating physician's opinion is entitled to greater weight than that of an examining physician. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989), citing *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). A treating physician's opinion is given deference because he is employed to cure the plaintiff and has a greater chance to know and observe the plaintiff as an individual. *Sprague*, 812 F.2d at 1230. Although the treating physician rule generally requires deference to the medical opinion of a plaintiff's treating physician, the opinion of the treating physician is not afforded controlling weight where that physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2).

The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, the ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. §§ 404.1527(d)(2) (I)-(ii), 416. 927(d)(2)(I)-(ii); *Orn*, 495 F.3d at 631-33.

As an initial matter, in his written decision denying SSI benefits, the ALJ did not specifically refer to these two pages (AR 1068-69) of the administrative record; however, the ALJ did reference plaintiff's medical records from her various medical providers, which included the Arrowhead Regional Medical Center records and, therefore, this October 4, 2006 evaluation. (AR 411-12). Plaintiff argues that the ALJ failed to specifically discuss Dr. Gill's opinion regarding plaintiff's psychosis, bipolar disorder, and auditory hallucinations. Dr. Gill noted an initial diagnostic impression of psychotic disorder, which was referenced to by the ALJ and rendered unconvincing as a result of plaintiff's drug and alcohol abuse. (AR 412, 1069). Dr. Gill made no statement regarding plaintiff's bipolar disorder, but another physician at the Arrowhead Regional Medical Center, Dr. Khushro B. Unwalla, did diagnose plaintiff with bipolar disorder on October 5, 2006 in a discharge report. (AR 1066). This diagnosis was similarly referenced to by the ALJ and rendered unconvincing as a result of plaintiff's drug and alcohol abuse. (AR 412). Therefore, even if Dr. Gill had made a statement regarding

- 6 -

1 plaintiff's bipolar disorder, such diagnosis would have been rendered unconvincing
2 for the same reason. *Id.* Additionally, the ALJ found the vagueness in Dr. Wu
3 Hsieh's January 31, 2008 discussion of plaintiff's auditory and visual
4 hallucinations a contributing factor in his decision not to accept Dr. Hsieh's
5 assessment; Dr. Gill's brief discussion of plaintiff's auditory hallucinations was as
6 vague if not more vague than Dr. Hsieh's. (AR 413, 1068, 1168-75). Furthermore,
7 the ALJ considered the plaintiff's statements regarding the intensity, persistence,
8 and limiting effects of her symptoms, such as the hallucinations, to be not fully
9 credible, because the plaintiff testified that medication controls the hallucinations.
10 (AR 415).

11 Regardless, the ALJ did not err in failing to discuss Dr. Gill's single
12 psychiatric evaluation. From a review of the administrative record, this October 4,
13 2006 evaluation was simply a one-time examination. Presumably, once plaintiff
14 was discharged from the Arrowhead Regional Medical Center on October 5, 2006,
15 she was no longer being treated by Dr. Gill. (AR 1058-59, 1065-67). Dr. Gill was
16 not a treating physician, since he never developed an ongoing treatment
17 relationship with plaintiff but only saw her on one occasion. 20 C.F.R. §
18 404.1502. His opinion was based on one psychiatric evaluation which did not
19 provide him with a longitudinal picture of plaintiff's impairments. Generally, the
20 longer a treating source has treated the plaintiff and the more times the plaintiff has
21 been seen by a treating source, the more weight will be given to that source's
22 medical opinion. 20 C.F.R. § 416.927. Given these facts, it was reasonable for the
23 ALJ not to consider this as the report of a treating physician, and therefore not to
24 give this opinion greater weight than others in the record.

25 Alternatively, even if Dr. Gill were to qualify as a "treating physician,"
26 given the fact that his opinion of the plaintiff's impairments was contradicted by
27 multiple other examining physicians, and appeared to be based on the plaintiff's
28 subjective complaints, the ALJ's failure to address particular portions was not a

- 7 -

material error. Dr. Gill only discussed plaintiff's current mental state in his written evaluation, which was premised on plaintiff's subjective complaints. Dr. Gill indicated that plaintiff admitted to using speed and cocaine quite frequently, which was the principal factor in the ALJ's reason for partially discounting plaintiff's credibility prior to November 2006. (AR 412, 413, 415, 1068). Moreover, his one-time examination was inconsistent with objective medical evidence. The ALJ noted that when the plaintiff was using cocaine, Dr. Linda Smith, a consultative examining psychiatrist, opined in 2003, that plaintiff was only mildly impaired and could perform simple, repetitive tasks and in 2006, that plaintiff had no mental limitations whatsoever. (AR 415, 246-53, 997-1004). From these facts, the ALJ reasonably concluded that without cocaine, the plaintiff could still perform at least simple, repetitive tasks. (AR 415).

Furthermore, although a GAF rating might be helpful to an ALJ in formulating a RFC assessment, it is not essential, and failure to refer to such assessment is not erroneous. Therefore, there is no material error on this issue.

***ISSUE NO. 2*: The ALJ properly considered testimony of lay witness Lanisha Tillman and the ALJ's failure to provide reasons for disregarding lay witness Timothy Moore was harmless error.**

Plaintiff asserts that the ALJ rejected the lay testimony of plaintiff's niece, Lanisha Tillman, without providing legally sufficient reasons. In a third party function report, dated September 12, 2003, Ms. Tillman reported that plaintiff needs to be told to bathe, never shaves, stays up late but medication helps her sleep, cannot handle money or pay bills, cannot drive, is paranoid, and has trouble remembering, concentrating, getting along with others, following instructions, and completing tasks. (AR 87-95). In his decision, the ALJ articulated,

> "[Plaintiff's] niece, Lanisha Tillman, offered lay observations. Those were considered and rejected by Judge Harrell, and I incorporate that discussion

- 8 -

here. In addition, Ms. Tillman's observations are dated September 2003, during a time the claimant was still using cocaine. Again, it does not appear that Ms. Gray was demonstrating her maximum capabilities." (AR 416).

Plaintiff contends that this discussion did not provide a legally sufficient reason for rejecting Ms. Tillman's testimony. Plaintiff further argues that the ALJ failed to discuss or even mention plaintiff's friend Timothy Moore's testimony. Mr. Moore, in a third party function report, dated February 19, 2006, reported that plaintiff has to be told to bathe, someone needs to help her shave, she cannot pay bills, count change, or handle money. He further reported that she can feed herself and has trouble sleeping but medication helps her sleep. Mr. Moore also reported that plaintiff has trouble remembering, concentrating, getting along with others, following instructions, and completing tasks. (AR 679-86).

Defendant responds that the ALJ properly considered and discounted Ms. Tillman's testimony which dated from five years prior. (AR 87-95). Furthermore, defendant contends that the ALJ's failure to consider Timothy Moore's testimony was harmless error; not only does it conflict with other evidence, but the fact that it was produced almost three years prior renders its relevance to plaintiff's current application weak. (AR 679-86).

[D]escriptions by friends and family members in a position to observe [plaintiff's] symptoms and daily activities have routinely been treated as competent evidence." *Sprague*, 812 F.2d at 1232; *see Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence[.]"). If the ALJ rejects the testimony of lay witnesses, the ALJ must give "reasons germane to each witness whose testimony he rejects." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can

confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Commissioner*, 445 F.3d 1050, 1056 (9th Cir. 2006).

In the instant case, the ALJ provided reasons for disregarding the testimony of lay witness Lanisha Tillman. In discussing Ms. Tillman's observations, Judge Urbin incorporated the following portion of ALJ Harrell's 2005 decision to support his rejection of her testimony:

> "[Third party statements by Lanisha Tillman] [do] not alter my opinion. Ms. Tillman reported that she mostly sees the claimant on weekends and some evenings. Ms. Tillman reported that the claimant was unable to do any household chores or to be alone because she is very paranoid and nervous. However, Ms. Tillman can only report her observations of the claimant. These observations may not be reflective of the claimant's maximal capacities." (AR 17).

ALJ Urbin, having established that Ms. Tillman's interactions with plaintiff primarily occurred on the weekends and some evenings, which indicates a limited amount of interaction, and during a time when plaintiff was still using cocaine, which indicates that plaintiff was not demonstrating her maximum capabilities, provided sufficient reasons for rejecting Ms. Tillman's testimony. (AR 416).

Furthermore, plaintiff's friend Mr. Moore's statements conflicted with plaintiff's own testimony, which the ALJ had found not fully credible. (AR 415). While Mr. Moore reported that plaintiff has to be told what to do, including when to bathe and when to dress, plaintiff testified that she was able to complete two semesters at Citrus College, evidence of much greater functioning. (AR 412-13, 415, 468-70, 1169). Plaintiff also reported caring for her nephew for two months in January 2008, which suggested greater functioning (AR 440). Moreover, plaintiff reported plans to spend time with her children and testified to having traveled to Ohio for a family reunion in 2007. (AR 415, 466, 1195). Given the

- 10 -

ALJ's credibility finding, failure to discuss Mr. Moore's testimony was harmless error.

Although the ALJ did not provide reasons for disregarding the testimony of lay witness Mr. Moore, Mr. Moore provided information that does not establish any greater disability than was found by plaintiff's own testimony as aforementioned and by Dr. Linda Smith and the ALJ, that plaintiff was capable of performing simple, repetitive tasks. (AR 246-53, 415, 997-1004). Furthermore, Mr. Moore's testimony does not establish any greater disability than was discussed in Ms. Tillman's function report, which was properly considered and rejected by the ALJ. In fact, Mr. Moore's testimony is nearly identical to Ms. Tillman's testimony in content and scope, and both were written when plaintiff was still using cocaine and not demonstrating her maximum capabilities.

Fully crediting the testimonies of both Ms. Tillman and Mr. Moore, this Court can confidently conclude that no reasonable ALJ could have reached a different disability determination. Therefore, the ALJ properly considered and discounted Ms. Tillman's testimony and his failure to provide reasons for disregarding Mr. Moore's testimony was harmless error.

***ISSUE NO. 3*: The ALJ properly posed a complete hypothetical question to the vocational expert.**

Plaintiff asserts that the ALJ's hypothetical propounded to the vocational expert failed to set out all of the plaintiff's particular limitations and restrictions and was therefore legally insufficient. Plaintiff specifies that the hypothetical question failed to set out factors bearing upon plaintiff's psychosis, severe mental impairments, and GAF score of 15. Defendant responds that the ALJ's hypothetical posed to the vocational expert reflected his RFC finding which was supported by the record.

If a claimant's impairment or combination of impairments do not meet or equal a listed impairment, and if a claimant cannot perform past relevant work, the

- 11 -

1  Commissioner has the burden of showing that a person has the RFC to perform
2  other kinds of work in the national economy. *Bowen v. Yuckert*, 482 U.S. 137,
3  141-42; *Embrey v. Brown*, 849 F.2d 418, 422 (9th Cir. 1988). The Commissioner
4  can meet this burden by using the testimony of a vocational expert or by reference
5  to the Medical-Vocational Guidelines. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162
6  (9th Cir. 2001). Hypothetical questions posed to the vocational expert must set out
7  all the functional limitations of a claimant. *Flores v. Shalala*, 49 F.3d 562, 570-71
8  (9th Cir. 1995). The assumptions contained in an ALJ's hypothetical to a
9  vocational expert must be supported by the record; otherwise, the opinion of the
10 vocational expert that a claimant has residual working capacity has no evidentiary
11 value. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

    At the hearing, the ALJ asked the vocational expert the following hypothetical:

> "If I found that the Claimant...could do simple, repetitive tasks, and if I found that physically the Claimant could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk about six hours, sit about six hours, could not climb ladders, rope, and scaffolds...no fine manipulation with the left hand and -- only occasional gross manipulation of the left hand, but the right hand is unlimited. So if I found that the Claimant had that residual functional capacity, would a hypothetical claimant with this Claimant's vocational profile be able to do any other work?" (AR 478-79).

The vocational expert responded that there would be work the plaintiff could engage in. The ALJ relied on the vocational expert's testimony in determining that plaintiff could perform alternative work such as hand packager, last polisher, and day worker. (AR 417, 482). Although the Dictionary of Occupational Titles descriptions do not specify whether the manipulative activities in these occupations are bilateral, the ALJ noted that the vocational expert was well aware that the plaintiff has limitations with only her left non-dominant hand, and therefore the

1  ALJ relied on the expert's expertise and accepted his testimony. (AR 417).

2  Here, the ALJ presented the vocational expert with all the limitations the ALJ found the plaintiff to have. With regard to plaintiff's physical impairments, the ALJ noted that the plaintiff is right-handed, and her medically determinable physical orthopedic impairments involve only her left hand. (AR 416). The ALJ accepted the most recent State Agency medical consultant's assessment on June 8, 2006, that plaintiff can perform medium work that does not require climbing of ladders, ropes, or scaffolds; furthermore, she cannot perform fine manipulation with the left hand, and she can perform no more than occasional gross manipulation with the left hand. (AR 1020-24). With regard to plaintiff's mental impairments, the ALJ stated that the plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible, primarily because she was found by a consulting psychiatrist to be able to perform at least simple, repetitive tasks, even during a time when she was using cocaine. (AR 415). The ALJ also discounted plaintiff's credibility as to her mental impairments given her testimony that medication controls the hallucinations and that she was able to receive passing grades in college.

Accordingly, the ALJ set out all of plaintiff's functional limitations in the hypothetical posed to the vocational expert. The hypothetical question accurately reflected plaintiff's residual functional capacity, age, education, and work experience. Since the ALJ presented the vocational expert with a hypothetical containing all of plaintiff's limitations, this issue lacks merit.

## V. ORDER

For the foregoing reasons, the decision of the Commissioner should be

1 | affirmed and plaintiff's Complaint is dismissed.

3 | Date: <u>July 30, 2009</u>

```
                              _____/s/_____
                              STEPHEN J. HILLMAN
                              UNITED STATES MAGISTRATE JUDGE
```